THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT DYAS, #Y26284 ,<br><br>        Plaintiff,<br><br>vs.<br><br>DOCTOR MYERS, WEXFORD HEALTH SOURCES, INC.,<br><br>        Defendants. | Case No. 3:22-cv-02200-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Robert Dyas, an inmate of the Illinois Department of Corrections ("IDOC"), brings this suit under 42 U.S.C. § 1983. (Doc. 1). Plaintiff alleges that Defendants Percy Myers ("Doctor Myers") and Wexford Health Sources, Inc. ("Wexford") violated the Eighth Amendment in providing Plaintiff with delayed and inadequate medical care while he was incarcerated at Centralia Correctional Facility ("Centralia"). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment.

### PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on September 21, 2022. (Doc. 1). After a screening order and after Plaintiff filed an amended complaint, the case proceeded with three claims:

**Count 1:** Eighth Amendment claim against Dr. Meyers for denying or

delaying Plaintiff's diagnosis and treatment of a left knee injury at Centralia for over a year from 2021-22.

**Count 3**:  Eighth Amendment claim against Dr. Meyers for denying or disregarding Plaintiff's request for a replacement CPAP machine and/or filters.

**Count 4**:  Eighth Amendment claim against Wexford for its policy, custom, or practice of understaffing Centralia, by offering the services of a prison physician on a part-time basis only, as well as its policy, custom, or practice of establishing policies and procedures that restrict employees from providing adequate medical devices to inmates.

(Doc. 10, p. 3; Doc. 29). Defendants dispute these claims and have moved for summary judgment as to each of them. (Doc. 38, 39). Plaintiff filed a response and Defendants replied. (Doc. 41, 42). Accordingly, this matter is ripe for decision.

## FACTUAL BACKGROUND

The following facts are taken from the record and presented in the light most favorable to House, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

**A.   Left Knee Injury**

Plaintiff injured his knee playing basketball in early 2020. (Doc. 45, p. 28). He requested to see a doctor for his knee. He saw a nurse practitioner on several occasions, including on July 1, 2021; August 9, 2021; and January 18, 2022. (Doc. 39-4, p. 2). He also saw Doctor Myers during 2020 and 2021, including on July 13, 2021; February 23, 2022. (Doc. 45, p. 29-31; Doc. 39-4, p. 2). The July 1st appointment concerned swelling and pain in Plaintiff's lower extremities. (Doc. 39-3, p. 2; Doc. 45, p. 57). Doctor Myers told Plaintiff

at the July 1, 2021, appointment that he would refer Plaintiff for an x-ray on his knee (Doc. 45, p. 22). Plaintiff informed Doctor Myers that he did not believe an x-ray would find the root of his problem. *Id.* at p. 29. Plaintiff did not receive any further treatment for his knee after the July appointment. He filed an emergency grievance requesting, among other things, an appointment with a doctor because he had received no treatment for his knee for eight months. (Doc. 1, p. 12). This grievance was partially upheld. *Id.* Doctor Myers did not refer Plaintiff for an x-ray until February 23, 2022; Plaintiff underwent an x-ray the next day. (Doc. 39-4, p. 2-3).

Days later, Plaintiff saw a physician's assistant for his knee pain. (Doc. 39-4, p. 3). She noted a potential meniscus injury and, on March 22, 2022, submitted a referral for Plaintiff to see an orthopedist. (Doc. 39-4, p. 3; Doc. 39-3, p. 6). The orthopedist examined Plaintiff on April 18, 2022, and recommended that Plaintiff undergo an MRI. (Doc. 39-3, p. 9; Doc. 39-4, p. 3). Plaintiff underwent an MRI on May 12, 2022. Doctor Myers eventually approved Plaintiff for a knee arthroscopy. (Doc. 39-3, p. 16). Plaintiff had surgery on September 27, 2022. Since the surgery, Plaintiff has recovered well. (Doc. 45, p. 63-64).

**B.      CPAP Machine and Filters**

Plaintiff learned that the CPAP machine that he used was subject to a worldwide recall in April 2021 when nurses recorded the serial numbers of inmates' CPAP machines and told the inmates that they would receive replacements. (Doc. 39-4, p. 47). Doctor Myers referred Plaintiff for a replacement CPAP machine in October of 2021. (Doc. 39-3,

p. 28; Doc. 45, p. 57-58). The referral was authorized on November 2, 2021. (Doc. 39-3, p. 30). However, the machine was not ordered until April 27, 2022, and Plaintiff did not receive it until May 2022. (Doc. 39-3, p. 29; Doc. 45, p. 59).

Plaintiff also had trouble obtaining new filters for his CPAP machine. The machine's instructions said to replace the filter monthly, but Plaintiff did not receive new filters regularly enough to do that. (Doc. 45, p. 35). When inmates, including Plaintiff, complained that they were not receiving new CPAP filters, Wexford provided new filters within "a week or two" of receiving a request. *Id*. at p. 35-36. Plaintiff also noted he had previously requested new filters every two months or so, and he sometimes received them upon request and would sometimes have to wait for an order to go through. *Id.* at p. 36. Plaintiff directed his requests for new CPAP filters to the Director of Nursing at Centralia. *Id*.

### LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th

Cir. 2025). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted); *Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (citation omitted); s*ee also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment]

motion." *Burton v. Kohn L. Firm, S.C.,* 934 F.3d 572, 579 (7th Cir. 2019) (citation omitted).

## DISCUSSION

### A.      Count 1

As a threshold matter, Defendants argue Plaintiff must lose on Count 1 because he is not a medical professional and did not retain an expert to testify as to his medical treatment. (Doc. 39, p. 10). In cases like this one, the Seventh Circuit requires a plaintiff to "offer verifying medical evidence" that a delay in medical treatment caused harm. *Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007) (internal quotations omitted). This does not mean that a plaintiff without a medical degree is required to retain an expert to survive summary judgment. Indeed, the Seventh Circuit has rejected this proposition. *See, e.g., Liefer*, 491 F.3d 710 at 715-716 (noting that expert testimony not required; reasonable jury could base finding of deliberate indifference on medical records and plaintiff's testimony). A reasonable jury could find that Plaintiff suffered harm based on the alleged delay in medical treatment of his knee. In August 2021, Plaintiff described his pain as intermittent and rated it 7 or 8 on a scale of 1 to 10. (Doc. 39-3, p. 3). In January 2022, he described the pain as throbbing and constant and rated it a 10 out of 10. (Doc. 39-3, p. 4). In other words, his knee problem worsened when it went untreated.

Doctor Myers is not entitled to summary judgment on Count 1 for two additional reasons.  Doctor Myers argues that Plaintiff "received abundant medical care, but his claims are based on his own beliefs that this treatment should have been different." (Doc. 39, p. 11). The Court does not agree with this characterization of the facts. Count 1, as designated in the screening order, alleges that Doctor Myers denied or delayed medical

treatment. (Doc. 10, p. 3). Plaintiff explained that he first told Doctor Myers about his knee problems in 2020, that he saw Doctor Myers multiple times about his knee in 2020 and 2021, and that he believed Doctor Myers ordered an x-ray following a medical appointment in July 2021. (Doc. 45, p. 22). Doctor Myers agrees that he saw Plaintiff in July 2021. Doc. (39-4, p. 2). Doctor Myers claims that he did not treat Plaintiff for knee pain until January 2022 and did not refer Plaintiff for an x-ray until February of 2022. (Doc. 39, p. 3, 11; Doc. 39-3, p. 5). Construing these facts in the light most favorable to Plaintiff, there are two genuine disputes of material fact that affect Count 1: when Doctor Myers knew of Plaintiff's knee pain and when he ordered an x-ray of Plaintiff's knee.

A reasonable jury could conclude that Doctor Myers acted with deliberate indifference. A significant delay in adequate medical treatment for a serious medical need may amount to deliberate indifference, particularly where it needlessly prolongs an inmate's suffering. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015); *see also Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). The Seventh Circuit has concluded that shorter delays can constitute deliberate indifference where the delay unreasonably prolongs an inmate's suffering. *See, e.g.*, *Peterman*, 604 F.3d at (noting two-month delay in dental examination); *Grieveson v. Anderson*, 538 F.3d 763, 779-780 (7th Cir. 2008) (noting one-and-a-half-day delay in treating broken nose); *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (stating that "[Plaintiff] does not allege that the delayed treatment exacerbated his injuries; rather, he contends that even if his condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim. This, too, is correct. . . Even a few days' delay in

addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference."). If Doctor Myers knew of Plaintiff's knee pain by or before July 2021 but did not order an x-ray until several months later, that could support a finding of deliberate indifference.

Second, Doctor Myers's assertion that he did not act with deliberate indifference solely because he treated Plaintiff for some conditions is not correct as a matter of law. On the contrary, courts look at the totality of an inmate's care when analyzing medical treatment under the Eighth Amendment. *See Petties v. Carter*, 836 F.3d 722, 728-729 (7th Cir. 2016), *as amended* (Aug. 25, 2016). Deliberate indifference does not require that a prisoner is "literally ignored;" if a doctor treats an inmate but disregards a risk that is "obvious enough," a fact finder may infer deliberate indifference. *Id.* at 729. It is for a jury to determine if Doctor Myers disregarded a sufficiently obvious risk in delaying a referral for an x-ray or any other aspect of his treatment of Plaintiff's knee pain. Accordingly, the Court finds that genuine disputes of material fact preclude summary judgment with respect to Count 1.

**B.    Count 4**

Count 4 is a *Monell* claim against Wexford involving two alleged policies: understaffing and restricting the timely provision of medical devices, such as CPAP machines. Wexford asserts that "Plaintiff simply has no evidence to support his claims that Wexford has a policy of understaffing and is unable to support his *Monell* claim" and

that Plaintiff "admittedly has no evidence" of a policy restricting the provision of medical devices. (Doc. 39, p. 12).

   i.   *Understaffing*

Plaintiff has not provided sufficient evidence from which a reasonable jury could conclude that Defendant Wexford had a practice or policy of understaffing at Centralia. Defendant Wexford asserts that Plaintiff has provided no evidence to show the existence of a policy of understaffing. (Doc. 39, p. 12). It is true that Plaintiff did not point to a written policy requiring understaffing. (Doc. 45, p. 72-73). However, Plaintiff is not required to show physical documentation of a policy because a practice need not be explicit or reduced to writing to be actionable under Section 1983. *See, e.g., Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (noting widespread practice that is permanent and well-settled may amount to unconstitutional policy or custom) (citing *Garrison v. Burke*, 165 F.3d 565, 571-572 (7th Cir.1999)); *see also Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) (requiring evidence of written policy would create "perverse incentive" for government actors to abide by unwritten policies).

Nonetheless, Plaintiff has not shown that any policy of understaffing, whether explicit or implicit, exists in this case. To show a practice or policy that amounts to deliberate indifference, a plaintiff "must show more than the deficiencies specific to his own experience." *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016). While there is no bright-line rule as to how frequently conduct must occur to be widespread, one, or

even three, instances of conduct are insufficient. *Thomas v. Cook County Sheriff's Department,* 604 F.3d 293, 303 (7th Cir. 2010). Where, as here, a plaintiff relies on indirect evidence, he must demonstrate that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. County of Cook,* 819 F.3d 343, 348 (7th Cir. 2016). In a prison medical context, the evidence must show "systemic and gross deficiencies in staffing, facilities, equipment, or procedures." *Id.* Then, if there is sufficient evidence of a gross deficiency, Plaintiff must also show that a policymaker knew about it and failed to correct it. *Id.*

Plaintiff cannot make these showings. First, he relies entirely on his own experience to show there was a practice of understaffing at Centralia. (Doc. 45, p. 73). The only other evidence to which he pointed was an IDOC policy that inmates were to have access to adequate healthcare. *Id.* at p. 12. The existence of that written IDOC policy does not show that Defendant Wexford had a different, unwritten, policy of understaffing at Centralia. Furthermore, Plaintiff has not pointed to any evidence at all that a policymaker knew of and disregarded the alleged policy of understaffing. No reasonable jury could conclude from Plaintiff's own experience and an IDOC policy requiring access to adequate medical care that Defendant Wexford had a policy of understating at Centralia.

### ii. *Restriction on provision of medical equipment*

Plaintiff has also not shown that a reasonable jury could conclude that Wexford had a practice or policy of hindering the provision of medical devices to inmates. Plaintiff's medical records do not document a request for a new CPAP machine or

replacement filters before Doctor Myers requested a new CPAP machine for Plaintiff on October 19, 2021. (Doc. 39-3, p. 1-7, 29). Doctor Myers's request was approved on November 2, 2021. *Id.* at 30. The replacement machine did not arrive at Centralia until months later, but Plaintiff has not shown any facts that show the delay was the result of a practice or policy. In fact, he said that after inmates complained they were not receiving new CPAP filters, Wexford provided new filters within "a week or two" of receiving a request. (Doc. 45, p. 35-36). Plaintiff also noted he had previously requested new filters every two months or so, and he sometimes received them upon request and would sometimes have to wait for an order to go through. (Doc. 45, p. 36). Even viewed in the light most favorable to Plaintiff, intermittent delays in providing replacement filters weigh against a finding that Wexford had a policy of hindering the provision of medical devices. No reasonable jury could conclude from the evidence before the Court that Wexford had a practice or policy of hindering the provision of medical devices. Accordingly, the Court finds that Wexford is entitled to summary judgment pertaining to Plaintiff's CPAP machine.

C.     Count 3

Doctor Myers is also entitled to summary judgment on Count 3. First, and as noted above, Plaintiff explained in his Deposition the Director of Nursing at Centralia was responsible for providing new CPAP filters to inmates, and he directed his requests for clean filters to her rather than to Doctor Myers. (Doc. 45, p. 36). Second, Plaintiff's medical records indicate that Doctor Myers referred Plaintiff for a replacement CPAP machine in

Page 11 of 12

October of 2021. (Doc. 39-3, p. 28; Doc.  45, p. 57-58). Plaintiff did not receive his replacement machine until May 2022, (Doc. 39-3, p. 29; Doc. 45, p. 64), but there is no evidence to show that Doctor Myers was responsible for this delay, let alone that he acted with deliberate indifference in disregarding Plaintiff's request for a replacement machine. Further, Plaintiff noted in his Deposition that, in his view, the true root of the delay was Wexford, not any service provider at Centralia. (Doc. 45, p. 74-75). Even viewing these facts in the light most favorable to Plaintiff, no reasonable jury could conclude that Doctor Myers acted with deliberate indifference to Plaintiff's need for a replacement CPAP machine.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Count 3 and Count 4 and **DENIES** Defendants' Motion for Summary Judgment with respect to Count 1.

**IT IS SO ORDERED.**

**DATED: March 31, 2026.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2026.03.31 09:53:38 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**